IN THE UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF PENNSYLVANIA

KAYLEE DRESSEL,                                    CIVIL DIVISION

          Plaintiff,                              Case No.  2:21-cv-1699

      v.

C. HARPER AUTO GROUP,

          Defendant.

### COMPLAINT AND JURY DEMAND

A.    ***Preliminary Statement***

1.    The plaintiff Kaylee Dressel brings this action under Title VII of the Civil Rights Act of 1964, 42 U.S.C. § 2000e *et seq.* to redress violations of her right to be free from employment discrimination based upon her gender and under the Americans with Disabilities Act of 1990 (the "ADA") to redress violations of her right to be free from employment discrimination based upon her pregnancy.  Because of the violations described herein, this Court is also empowered to exercise pendant jurisdiction pursuant to the Pennsylvania Human Relations Act ("PHRA"), 43 P.S. § 951 *et seq.*  A jury trial is demanded.

B.    ***Jurisdiction***

2.    The jurisdiction of this Court is invoked pursuant to 42 U.S.C. § 2000e *et seq.*, 42 U.S.C. § 12117(a),  28 U.S.C. § 1331 and under the doctrine of pendant jurisdiction.

3.    On or about June 3, 2021, the plaintiff filed a timely charge alleging discrimination with the Equal Employment Opportunity Commission ("EEOC"), docketed at 533-2021-01459.  This charge was simultaneously cross-filed with the Pennsylvania Human Relations Commission.

4.    The EEOC issued a Notice of Right to Sue dated September 9, 2021.

5.     This complaint is filed within 90 days of receipt by the plaintiff of the Notice of Right to Sue.

C.     *__The parties__*

6.     The plaintiff is an adult individual who resides in Uniontown, PA 15401 (Fayette County).

7.     The defendant C. Harper Auto Group ("C. Harper" or "the company") is an entity doing business in the Commonwealth of Pennsylvania.  The defendant has a place of business located at 1500 Morrell Ave., Connellsville, PA 15425 (Fayette County).

8.     The defendant is in the business of selling vehicles and providing maintenance and repair services.

9.     At all times material, the defendant employed more than fifteen employees.

10.     The defendant was the plaintiff's employer and is an employer within the meaning of Title VII of the Civil Rights Act of 1964, 42 U.S.C. §2000e(b).

C.     *__Factual background__*

11.     The plaintiff was hired by C. Harper on July 27, 2020 and her employment was terminated on February 17, 2021.

12.     The plaintiff's position was Parts Specialist.  Her duties in this position involved customer service, looking up parts for oil changes, brakes and rotor jobs, supplying them to the technicians tasked with doing the work, inventorying and selling parts for motor vehicles.

13.     At all times relevant, the plaintiff performed the functions of her job competently and efficiently and was considered to be a satisfactory employee.

14.     On July 30, 2020, the plaintiff went to a doctor's appointment and learned that she was seven weeks pregnant.  After the appointment, she went to work and met with her direct

supervisor, Sarah Dofka, Parts Manager to tell her the news.  During the meeting, the plaintiff was upset and in tears and told Dofka – who was also pregnant at the time – that she was afraid to lose her job because she was pregnant.  Dofka assured her that there would be no problems and that her job would not be in jeopardy.

15.     In mid-August 2020, Dofka left for maternity leave.  While Dofka was on maternity leave, the plaintiff reported to Chris Haines, Parts Director.  The plaintiff told him that she was pregnant.  Haines seemed surprised by the news.  The plaintiff also told Haines that she had told Dofka that she was pregnant and that Dofka assured her that her job would not be in jeopardy.  Haines only response was "Babies are blessings and there is nothing we can do about it.  Congratulations."

16.     On October 26, 2020, Dofka returned from maternity leave.

17.     The plaintiff's anticipated delivery date was in March 2021.  She intended to work as long as she could and start her maternity leave shortly before her due date.

18.     In early January 2021, Dofka told the plaintiff that she qualified for FMLA time for her maternity leave, but, that she would have to "cash in" her vacation days which would be included in her FMLA time.

19.     By late January 2021, the plaintiff was experiencing severe physical problems including cramping, pregnancy related sciatica resulting in severe back pain and other complications due to her pregnancy.  Her doctor's office advised her to start her maternity leave on February 3, a month earlier than the plaintiff had planned.  The physician's PA issued a note to that effect, which the plaintiff provided to John Childs, Human Resources Director.

20.     The plaintiff's last day of work was February 2, 2021.  She started her maternity leave the next day pursuant to her doctor's orders.

21.     On February 3, 2021, Childs told the plaintiff that he was going to get the short-term disability and FMLA paperwork started and reminded the plaintiff that she would need to cash in her vacation days in order for the FMLA to commence.

22.     On February 17, 2021, the plaintiff received an email from Childs stating, in pertinent part, as follows:

> *After doing more research I had thought you was* [sic] *here longer than a year, so unfortunately you don't qualify for the FMLA but give me a call after your 12 weeks and we can see what we can do.*

23.     The plaintiff was concerned after getting this email, so she texted him and asked him to call.  He called the plaintiff and told her that he wasn't aware that the plaintiff had not been employed for an entire year at the time she left for maternity leave.  He told the plaintiff "FMLA kicks in after a year" and "since you don't qualify for the FMLA, your position is not guaranteed."  The plaintiff said, "So, in layman's terms, you're telling me that I do not have a job?"  He responded, "Yes, but like I said, get in touch with me when you're ready to come back and I'll see what I can do."

24.     The plaintiff gave birth on March 10, 2021.

25.     On May 3, 2021, exactly twelve weeks after she had started her maternity leave, the plaintiff got in contact with Childs about returning to work.  Childs told her, "Your position has been filled.  We do have a management position open, but we are looking for someone with three to four years parts management experience."  The plaintiff threw her hat in the ring for the job, telling Childs that "I have three years parts experience and management experience, just not parts management experience; would that be something you'd be willing to train me for?"  He refused to consider her for the job, telling her that the company wanted someone coming from another Chrysler/Dodge/Jeep/Ram dealership.  The plaintiff said, "so basically you don't have a

spot for me?"  Childs confirmed that her position was already filled and the only open position was not one that she would be considered for.

26.     The plaintiff was terminated because of her gender; specifically because she was pregnant.  The company's "excuse" that she was terminated because she had not worked long enough to qualify for FMLA is a pretext, and, in fact, is evidence that the reason for her termination was discriminatory based on her getting pregnant "so early" in her employment.

27.     Further, the plaintiff was terminated in violation of the American with Disabilities Act because the employer refused to provide a reasonable accommodation of allowing her to take maternity leave before returning to her job, and, instead, terminating her employment and hiring an individual outside of her protected class for her job.

### FIRST CAUSE OF ACTION

28.     The preceding paragraphs are incorporated herein by reference as if they were set forth at length.

29.     The plaintiff is female and thus is protected against discrimination on the basis of her gender under Title VII.

30.     The plaintiff was qualified for her position.

31.     Despite her qualifications, the plaintiff was terminated.  The reasons given for her discharge were a pretext.

32.     The defendant's discharge of the plaintiff was in violation of Title VII because it was based upon her gender, and, more specifically, because she was pregnant.

33.     The defendant's violation of Title VII and the ADA was committed with intentional or reckless disregard for the plaintiff's federally protected right to work in an environment free of gender discrimination.

## SECOND CAUSE OF ACTION

34.     The preceding paragraphs are incorporated herein by reference as if they were fully set forth herein.

35.     The plaintiff is protected against discrimination on the basis of her pregnancy related "disability" under the ADA.

36.     The plaintiff was qualified for her position.

37.     Despite her qualifications, the plaintiff was terminated.  The reasons given for her discharge were a pretext.

38.     The defendant's discharge of the plaintiff was in violation of the ADA because it was based upon her pregnancy related disability.

39.     The defendant's violation ADA was committed with intentional or reckless disregard for the plaintiff's federally protected right to work in an environment free of discrimination.

## THIRD CAUSE OF ACTION

40.     The preceding paragraphs are incorporated herein by reference as if they were fully set forth herein.

41.     As a direct and proximate cause of its actions, detailed above, the defendant has violated the plaintiff's right to be free from discrimination under the Pennsylvania Human Relations Act, 43 Pa. C.S.A. § 951 *et seq*.

WHEREFORE, the plaintiff respectfully requests judgment be entered in her favor and against the defendant and that the defendant be required to provide all appropriate remedies under Title VII, the ADA and the PHRA, including attorney's fees and costs.

Respectfully submitted,

*/s/ Michael J. Bruzzese*

Michael J. Bruzzese
Pa. I.D. No. 63306

220 Koppers Building
436 Seventh Avenue
Pittsburgh, PA 15219

(412) 281-8676

Counsel for the plaintiff

Dated: November 22, 2021